**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 7, 2026

Thomas A. Uebler, Esquire
Mccollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808

Kevin Gallagher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE: *LG Land, LLC, et al. v. Dream Finders Holdings, LLC, et al.*,
Civil Action No. 2025-0459-MTZ

Dear Counsel:

As you know, the plaintiffs seek this Court's statutory subject matter jurisdiction via an application to confirm an arbitration award under 10 *Del. C.* § 5713.[1] In the alternative, and presumably under the cleanup doctrine, the plaintiffs ask this Court to award damages for breach of an asset purchase agreement by and among several LLCs.[2] The parties have been busy briefing interlocking motions: the defendants' motion to dismiss,[3] the plaintiffs' motion for summary judgment,[4] and the plaintiffs' motion to supplement their complaint.[5]

The defendants seek dismissal on the grounds that the parties contracted for an expert determination, leaving no arbitration award for this Court to confirm. While the defendants identify that issue as a merits issue under Court of Chancery Rule 12(b)(6), it is fundamentally one of subject matter jurisdiction under Rule 12(b)(1). The determination at issue is an expert determination, not an arbitration award, so Section 5713 does not open this Court's doors to what is otherwise a

---

[1] Docket Item ("D.I.") 1 [hereinafter "Compl."] ¶¶ 9, 34–41; D.I. 28 ¶¶ 16, 145–52.

[2] Compl. ¶¶ 42–56, Prayer for Relief; D.I. 28 Ex. 1 at Prayer for Relief; *see Sun Life Assurance Co. of Canada-U.S. Ops Hldgs., Inc. v. Gp. One Thousand One, LLC*, 206 A.3d 261, 265–70 (Del. Super. 2019) (concluding 6 *Del. C.* § 18-111 did not confer statutory jurisdiction over a dispute over contracts between Delaware LLCs).

[3] D.I. 11; D.I. 15; D.I. 18; D.I. 21.

[4] D.I. 12; D.I. 18; D.I. 21; D.I. 25.

[5] D.I. 28; D.I. 32; D.I. 34.

legal claim seeking legal relief. The case is dismissed, and the plaintiffs may transfer the matter to Superior Court under 10 *Del. C.* § 1902 within sixty days. If the plaintiffs elect to transfer, the pending motion for leave to file a supplemental complaint will be transferred as currently briefed.

## I. BACKGROUND

On September 7, 2023, the parties entered into an Asset Purchase Agreement (the "APA").[6] In general, the APA specifies a dispute resolution process comprising JAMS mediation followed by litigation in the Delaware courts.[7] That process applies to disputes concerning the enforcement of "any provision of, or based on any right arising out of[] [the APA] or any agreement, certificate, instrument or other document" delivered in connection with it.[8]

Article II, which governs the purchase consideration, specifies an alternative dispute resolution process for post-closing purchase price disputes. Section 2.01(a) sets forth a formula for calculating the purchase price of the acquired assets, with net asset value as one component.[9] The purchase price would be "subject to [post-closing] adjustment pursuant to Section 2.02."[10]

Section 2.02(a) instructed the purchaser to deliver a closing statement setting forth its calculation of the purchase price and its various components within ninety days of closing.[11] The sellers could either accept the closing statement or submit a written objection notice to the purchaser within fifteen days.[12] If the sellers submitted an objection notice, the parties were required to "seek in good faith to resolve any disagreements" within thirty days.[13] If the parties could not reach

---

[6] *See* Compl. Ex. A [hereinafter "APA"].

[7] *Id.* § 11.19.

[8] *Id.*

[9] *Id.* § 2.01(a).

[10] *Id.* §§ 2.01(a), 2.02.

[11] *Id.* § 2.02(a).

[12] *Id.* § 2.02(b).

[13] *Id.* § 2.02(c).

agreement, they were to engage KPMG, which "shall act as an expert (and not an arbitrator)."[14]  KPMG would "consider only the disagreements specified in the Objection Notice," and its decision would be "final and binding" on the parties for purposes of Article II.[15]

The parties followed those procedures and retained KPMG on October 7, 2024, to resolve disagreements concerning net asset value calculations.[16]  KPMG's engagement letter (the "Engagement Letter") confirmed KPMG was being retained under Section 2.02(d) "as a neutral expert (and not an arbiter)," and that its decision would be "final and binding."[17]  It also stated KPMG's "award shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq."[18]  Any dispute between KPMG and the parties concerning the services provided under the Engagement Letter would be resolved by mediation followed by binding arbitration.[19]

KPMG rendered its decision on April 11, 2025.[20]  Its decision reaffirmed that "the Parties jointly engaged KPMG to serve as a neutral expert (and not arbiter)."[21]  Of the disputed amounts, KPMG determined $27,427,697 in favor of the sellers and $3,428,107 in favor of the purchaser.[22]  Under both the APA and the Engagement Letter, the purchaser was required to pay $27,427,697 to the sellers within five days of KPMG's decision.[23]  The purchaser failed to do so.[24]

---

[14] *Id.* § 2.02(d).

[15] *Id.*

[16] Compl. ¶¶ 18, 21, 25; Compl. Ex. B [hereinafter "Engagement Letter"].

[17] Engagement Letter at 1.

[18] *Id.* at 4.

[19] *Id.* at 7.

[20] *See* Compl. Ex. C.

[21] Compl. Ex. C. at 2.

[22] *Id.* at 2–4; Compl. ¶ 29.

[23] APA § 2.01(e); Engagement Letter at 3.

[24] Compl. ¶ 33.

The plaintiffs filed this action on April 28, 2025.[25] The complaint advances two counts. Count I is an application for this Court to confirm KPMG's decision as an arbitration award under 10 *Del. C.* § 5713. Count II, pled in the alternative, is a breach of contract claim alleging the defendants failed to pay what they owe.

On May 21, the defendants moved for dismissal of the complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6) or, in the alternative, a stay pending JAMS mediation.[26] A week later, the plaintiffs filed a motion for summary judgment.[27] After briefing both motions, the parties participated in a mediation on October 8 and agreed to refrain from litigating the action pending more negotiations.[28] Those negotiations reached an impasse on November 17.[29] That same day, the plaintiffs filed a motion for leave to supplement the complaint, seeking to assert thirteen additional counts.[30] I took this matter under advisement on January 6, 2026.[31]

## II.   ANALYSIS

"The Court of Chancery is proudly a court of limited jurisdiction. The Court defends that boundary and has a duty to examine issues of subject matter jurisdiction *sua sponte*."[32] "The Court of Chancery can exercise subject matter

---

[25] Compl.

[26] D.I. 11.

[27] D.I. 12.

[28] D.I. 28 ¶ 2; D.I. 32 ¶ 9.

[29] D.I. 28 ¶ 2; D.I. 32 ¶ 9.

[30] D.I. 28; D.I. 28 Ex. 1.

[31] D.I. 36.

[32] *Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at *1 (Del. Ch. July 8, 2021); *see, e.g.*, Ct. Ch. R. 12(h)(1) ("A party may assert a defense under Rule 12(b)(1) [by] motion filed at any time, or the Court may raise the defense on its own initiative."); *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991) ("[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties.").

jurisdiction only when a case falls into one of three buckets."[33] Those buckets include cases where (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) jurisdiction exists by statute."[34] The plaintiffs seek this Court's jurisdiction in the third bucket, via 10 *Del. C.* §§ 5713 and 5702(c), to confirm KPMG's decision as an arbitration award.[35] But if KPMG's decision is an expert determination rather than an arbitration award, those statutes do not apply. There is no other means for the plaintiffs to access this Court's limited subject matter jurisdiction.

"Binding alternative dispute mechanisms fall along a spectrum: [a]t one end is an arbitration that has the look and feel of a judicial proceeding, except that it is handled privately and with less formality."[36] "At the other end is an expert determination in which an expert with technical skills or knowledge makes a determination, largely on its own, and with only limited party input."[37] Parties can tailor a dispute resolution mechanism to fall anywhere along this spectrum.

The Court's task is to determine where the provision falls along that spectrum. Its analysis begins with the provision's plain language. Using expert-not-arbitrator language "strongly signals an expert determination."[38] "The use of the expression 'as an expert and not as arbitrator' is now so common that it is

---

[33] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[34] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (footnotes and citations omitted).

[35] Compl. ¶ 9.

[36] *Paul v. Rockpoint Gp., LLC*, 2024 WL 89643, at *10 (Del. Ch. Jan. 9, 2024) (quoting *ArchKey Intermediate Hldgs. Inc. v. Mona*, 302 A.3d 975, 989 (Del. Ch. 2023)).

[37] *ArchKey*, 302 A.3d at 989.

[38] *Paul*, 2024 WL 89643, at *10; *see also Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*, 2019 WL 366614, at *1 (Del. Ch. Jan. 29, 2019) ("The Merger Agreement designates the independent accountant 'an expert, not an arbitrator.' Under settled Delaware case law, such language calls for an expert determination, not an arbitration." (collecting cases)).

difficult to conceive of a case in which a court would not treat those words as meaning exactly what they say."[39]

"But labels are not dispositive. If the parties have used one term but constructed a mechanism that operates like the other, then a court will give effect to the parties' actual agreement."[40] Assessment of the mechanism's means of operation "turns primarily on the degree of authority delegated to the decision-maker."[41] In an arbitration proceeding, the arbitrator has the "authority to decide all legal and factual issues necessary to resolve the matter."[42] That broad grant of authority is "analogous to the powers of a judge in a judicial proceeding."[43] In an expert determination, the expert's authority "is limited to its mandate to use

---

[39] *Penton Bus. Media Hldgs., LLC v. Informa PLC*, 252 A.3d 445, 462 (Del. Ch. 2018) (internal quotation marks and citations omitted); *see also EMSI Acq., Inc. v. Contrarian Funds, LLC*, 2017 WL 1732369, at *16 (Del. Ch. May 3, 2017) (noting that where an agreement used the phrase "acting as an expert and not an arbitrator," interpreting the auditor's decision as an arbitration award "would violate . . . the cardinal principles of contract construction").

[40] *Paul*, 2024 WL 89643, at *10 (citing *ArchKey*, 302 A.3d at 992); *see also Penton*, 252 A.3d at 462 ("It is even possible to envision a setting where the parties included 'expert not arbitrator' language, but then constructed a dispute resolution provision that had numerous features associated with commercial arbitration."); *EMSI*, 2017 WL 1732369, at *16 (observing that "in certain instances an 'expert's' decision in a dispute resolution proceeding, or the parties' course of conduct during a dispute resolution proceeding, may be tantamount to an arbitration" (footnotes omitted)).

[41] *ArchKey*, 302 A.3d at 993; *see Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 618 (Del. 2023); *see also Cedres v. Geoffrey Servs. Corp.*, 2024 WL 1435110, at *2 (Del. Ch. Apr. 3, 2024) ("The framework adopted by the Delaware Supreme Court [in *Terrell*] depends on the type and scope of authority delegated to the decisionmaker.").

[42] *Penton*, 252 A.3d at 464 (quoting Comm. on Int'l Commercial Disputes, N.Y.C. Bar Ass'n, *Purchase Price Adjustment Clauses and Expert Determinations: Legal Issues, Practical Problems and Suggested Improvements* 4 (2013)).

[43] *Id.*

its specialized knowledge to resolve a specified issue of fact," usually one of valuation.[44]

A standard accountant true-up mechanism operates as an expert determination. In *ArchKey*, the purchase agreement contained a dispute resolution provision nearly identical to Section 2.02, but it labeled the independent accountant "an arbitrator."[45] Despite that label, the provision plainly limited the independent accountant's scope of authority to deciding only "the disputed matters identified in the Objection Notice, not the parties' dispute generally."[46] The Court observed that narrow scope "is the essence of an Accountant True-Up Mechanism" and "is consistent with an expert determination."[47] Other clues pointing to an expert determination include the choice to designate an independent accountant as the decisionmaker,[48] and the absence of any reference to a set of arbitral rules or a sponsoring organization.[49]

Here, Section 2.02(d) provides, in relevant part:

> In the event Purchaser and the Seller Parties are unable to resolve ***the disagreements raised in an Objection Notice*** within thirty (30) days after timely delivery of such Objection Notice, Purchaser and the

---

[44] *Id.*

[45] *ArchKey*, 302 A.3d at 985.

[46] *Id.* at 995.

[47] *Id.* (citing *Ray Beyond*, 2019 WL 366614, at *6); *see also Driven Intermediate Hldgs., Inc. v. Jimenez*, 2026 WL 892029, at *4–5 (Del. Ch. Mar. 31, 2026) (concluding the agreement's dispute resolution provision was a 'run-of-the-mill Accountant True-Up Mechanism' calling for an expert determination, despite its characterization of the independent accountant as an 'arbitrator'" (quoting *ArchKey*, 302 A.3d at 991–92, 995)).

[48] *ArchKey*, 302 A.3d at 996 ("That choice strongly suggests an intent to rely on the Independent Accountant's subject matter expertise, which is consistent with an Accountant True-Up Mechanism and inconsistent with legal arbitration."); *see also Ray Beyond*, 2019 WL 366614, at *8 ("Arbitration of legal issues arising in post-closing price disputes is typically conducted by legal professionals. By contrast, the Settlement Accountant is an independent accountant." (footnotes omitted)).

[49] *ArchKey*, 302 A.3d at 996.

> Seller Parties shall engage KPMG (or such other mutually agreeable independent certified public accounting firm) (the "Accounting Firm") to resolve the issues that remain in dispute. ***The Accounting Firm shall act as an expert (and not an arbitrator), shall consider only the disagreements specified in the Objection Notice*** that are not resolved pursuant to Agreed Adjustments, shall render a decision as to such disagreements that is subject to, and in accordance with, the terms and conditions of this Agreement without altering, modifying, amending, adding to or subtracting from such terms and conditions, and, in resolving any such disagreement, shall not assign a value to any item greater than the greatest value for such item claimed by either party or less than the smallest value for such item claimed by either party . . . . [S]uch decision of the Accounting Firm, shall be final and binding on the parties to this Agreement for purposes of this Article II.[50]

The provision labels itself as an expert determination. And it operates as an expert determination. It is a "run-of-the-mill" accountant true-up mechanism like the one in *ArchKey*.[51] And it confines KPMG's mandate to "only the disagreements specified in the Objection Notice"—here, the factual dispute over net asset value.[52] The provision does not grant KPMG the authority to "make binding decisions on issues of law or legal claims, such as legal liability."[53] Nor does Section 2.02(d) make any reference to a set of arbitral rules or a sponsoring organization who might supply one. In short, nothing in Section 2.02(d) indicates the parties contracted for arbitration.

The plaintiffs' treatment of KPMG's determination as an arbitration award does not rely on Section 2.02. They look to one line in KPMG's Engagement Letter that describes KPMG's determination as an "award" subject to the FAA.[54]

---

[50] APA § 2.02(d).

[51] 302 A.3d at 992.

[52] APA § 2.02(d).

[53] *Cedres*, 2024 WL 1435110, at *2 (citations omitted).

[54] *See* Engagement Letter at 4.

But our case law teaches that "labels are not dispositive."[55]  In the next breath, the Engagement Letter calls for KPMG to act "as a neutral expert (and not an arbiter)."[56]  And the Engagement Letter describes the standard accountant true-up mechanism laid out in Section 2.02(d).  It calls for KPMG to resolve only the "existing disagreements with respect to the balances included in the calculation of Net Asset Value."[57]  That limited mandate strongly signals an expert determination.[58]  While the Engagement Letter details a set of procedural rules that may sound in arbitration, including the opportunity for each side to present "Initial Submissions" and "Rebuttal Statements,"[59] *ArchKey* explains those submissions are among the "standardized steps" in a typical accountant true-up mechanism.[60]

KPMG's decision is an expert determination.  Regardless of whether I grant the plaintiffs' motion to supplement their complaint, that conclusion compels dismissal of the case for lack of subject matter jurisdiction.[61]  The plaintiffs' original and proposed supplemental complaints both seek legal relief on legal claims, and do not trigger this Court's statutory subject matter jurisdiction to confirm an arbitration award.[62]

---

[55] *Paul*, 2024 WL 89643, at *10.

[56] Engagement Letter at 1.

[57] *Id.*

[58] *See ArchKey*, 302 A.3d at 995.

[59] Engagement Letter at 2–3.

[60] *See ArchKey*, 302 A.3d at 991 ("During the dispute resolution phase, the parties tender initial and rebuttal submissions with supporting documentation.").

[61] *See Driven*, 2026 WL 892029, at *5 (dismissing an application for confirmation of an arbitration award under 10 *Del. C.* § 5713 for lack of subject matter jurisdiction "[b]ecause the process was an expert determination").

[62] The plaintiffs' proposed supplemental complaint asserts thirteen additional counts. Counts I–V, VII, X–XI, and XV are breach of contract and indemnification claims seeking damages.  Counts VI and IX are conversion claims seeking damages.  Count XII asserts a violation of Delaware's Computer Related Offenses Act, and seeks statutory damages.  Counts VIII and XIII are unjust enrichment claims seeking damages.  And

### III.  CONCLUSION

This matter is **DISMISSED** subject to transfer to the Superior Court under 10 *Del. C.* § 1902.  The parties are responsible for filing a stipulated proposed order and any notice of election.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

Count XIV is a promissory estoppel claim seeking an order compelling the defendants to pay money.  Each of these counts is a legal claim seeking a legal remedy.  D.I. 28 Ex. 1.

This Court's jurisdictional inquiry looks beyond "the plaintiff's incantation of magic words sounding in equity."  *Savage v. Savage*, 920 A.2d 403, 408 (Del. Ch. 2006) (internal quotation marks omitted) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).  A realistic assessment of the relief "actually sought" by the plaintiffs confirms an adequate remedy exists at law.  *See Rapposelli v. Elder*, 1977 WL 23821, at *1 (Del. Ch. Nov. 8, 1977).

The two unjust enrichment counts allege the plaintiffs "lack an adequate remedy at law," but seek only monetary relief in connection with breaches of the APA.  *See* D.I. 28 Ex. 1 ¶¶ 226, 264.  Count VIII, pled in the alternative, seeks to recover damages for a breach of Section 1.02.  *See id.* ¶ 227 ("Sellers have been damaged by Buyers' use of Sellers' bank accounts in an amount to be proved at trial, which is not less than $404,298.92.").  Count XIII seeks, in substance, to recover an overpayment amount owed under Section 2.01 and damages for breaches of Sections 1.02 and 7.13.  *See id.* ¶¶ 261 ("Buyers continued to use Mr. Terry's licenses without paying the agreed amounts and without replacing the Baldwin Chase Bond."), 262 ("Sellers have incurred attorneys' fees, expended resources, and dedicated hours of work addressing the wrongful use.").  "These off-the-contract theories of recovery are legal, not equitable claims."  *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496–97 (Del. 2003) (citation omitted).